IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 23-162-BAH-1 |
| | : | |
| HEATHER KEPLEY, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Heather Kepley's early life was characterized by abandonment, abuse, and neglect by those whom she depended on and loved. She answered by isolating herself emotionally, relying on her own industriousness, and focusing on insulating her children from the same treatment that marked her tumultuous early years. Both the trauma she has endured and her self-preserving strategy of emotional isolation weakened her and made her susceptible to the persuasion of a controlling political ideology. One that she followed to Washington, D.C. on January 6, 2021 – a trip she wishes she had never made.

Life has rarely been fair to anyone, but it has been particularly unfair to Heather Kepley. She has persevered for decades, raising two children with little support and earning a reputation of dependability from employers and friends.[1] All the while, she has felt a lingering loneliness and, over time, a rising feeling of resentment. Prior to 2016, Heather was never particularly political. She never had time to care much about what was

---

[1] *See* Exhibit A - Letters of Support from Erica Helsel, Heather Delgado, and Carolyn Fredricks

happening in Washington, D.C. or to put much weight on who held office.  That changed with the firebrand, light on facts and heavy on blame casting, message that characterized Donald Trump's political rise.  Heather was overworked, underappreciated, and in need of a savior: someone who would tell her that everything she was doing was good enough. That *she* was good enough. That the reasons she struggled were the fault of others and that relief would come – if only she would follow. And follow she did. She attended the rallies, she read the websites, and she threw her emotional wellbeing behind the messages of a man who now faces indictments up and down the East Coast.

She stands before this court humbled, empty, once again feeling alone, but now free from the grip of a political movement that turned her life upside down. She still believes in many of the falsehoods that she once chased, but she no longer chases them. She pleaded guilty to Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), a Class A misdemeanor. The advisory guidelines recommend a sentence within the range of 0–6 months. The United States Probation Office recommends a sentence of three years of probation.  The Defense agrees that a custodial sentence is greater than necessary and joins the Probation Office's recommendation for a probationary sentence.  However, a twenty-four-month period of probation, 60 hours of community service, and a $500 restitution order will achieve the goals of a sentence: to punish, to deter, to incapacitate, and to rehabilitate. *See* 18 U.S.C. § 3553(a); *Tapia v. United States*, 564 U.S. 319, 325 (2011) (describing the factors in 18 U.S.C. § 3553(a)). Such a sentence will not create unwarranted disparities between Heather and other people who, like her, did not engage in any assaultive conduct or property damage, remained outside the doors of the Capitol Building, have shown

remorse and accepted a plea agreement at the first available opportunity, have demonstrated the ability and will to comply with pre-trial supervision, and are a low risk to ever again engage in unlawful conduct. The suggested sentence meets the same objective as a sentence of thirty-six months of probation given to other similarly situated defendants who were sentenced in 2022, because it will keep Heather under supervision through the next presidential election and inauguration. While she will continue to vote, she no longer plans to provide any vocal support for any political candidate.

I.   PERSONAL BACKGROUND, TRAUMA, AND ATTRACTION TO TRUMP

Heather was raised between the various living places of her mother, who struggled with substance abuse, and the relatively stable household of her father, whose longtime partner treated Heather as a threat.[2] Although she preferred to live with her father, with whom she always shared a close relationship, his home was the source of some of the most impactful trauma that characterized Heather's early life. He met and married his second wife while Heather was still in grade school. However, she soon became ill and died from Leukemia only two years later.[3] A year after that Heather was abused in a way that would have lasting impacts on her sense of personal safety and self-worth for years to come. Despite the obviously traumatizing effects of that incident, Heather has never had any therapy or counseling to help her process its effects and when asked by Dr. Cooney-Koss what impact the incident had she stated that she "brushed it off and figured it would be okay."[4]

---

[2] **Pre-Sentence Report ("PSR") ¶¶ 81-83.**
[3] *See* Exhibit B – Psychological Evaluation of Heather Kepley by Dr. Laura Cooney-Koss at 2.  Exhibit B was filed under seal.
[4] Id.

Heather's sense of self-worth was further diminished by the years of mentally abusive and manipulative behavior that characterized her time living in her father's home after he began a long-term partnership with a next-door neighbor.[5] When she was seventeen, she moved from his house and began residing with her mother. However, her life there was chaotic. Her mother required that she pay rent and when Heather lost her job her mother evicted her on Christmas Eve. Heather was a senior in high school at the time.[6]

Facing unemployment and homelessness at the age of seventeen, Heather moved in with the family of Stephen Kepley. The two began dating and Heather was soon pregnant with her first child. Her pregnancy, her time in the hospital after giving birth, and her early years as a mother were all marked by physical and psychological abuse.[7] Despite those experiences, Heather stayed. Her repeated and consistent exposure to abuse by those closest to her had taught her that she did not deserve better. After a decade, the relationship dissolved due to his infidelity.

Her experiences with tumultuous homes and unstable adults left Heather vulnerable, but also provided direction for what she prioritizes in her own life. She is self-reliant, hardworking, and family centered. She is driven to provide a stable home for her children, to protect them, and to be there for them emotionally in a way that the adults in her life rarely were for her.[8] She has been successful in this pursuit, and it is admirable.

---

[5] **PSR ¶ 82**.
[6] Exhibit B at 3.
[7] Exhibit B at 3-4; **PSR ¶ 84**.
[8] **PSR ¶ 87**; Exhibit A – Letter of Support from Heather Delgado.

Regrettably, this singular life focus left little time for Heather to engage in selfcare and she often felt exhausted and alone. She was suffering from anxiety and depression and was receiving no mental health counseling. She began to feel hopelessness regarding the difficulty of providing food, shelter, and emotional support for two children on her own. She was vulnerable, even if she would never admit that to herself. Although she had never before been keen on politics, she became attracted to the message of Donald Trump which conveyed simple fixes to complex societal issues. She perceived that the economy was better during his presidency and found correlation between her financial wellbeing and his policies. When she went online, she read that the criticisms that some had of Trump were false narratives. She found comfort in these simple explanations.

Trump filled a void in Heather's life and exploited her desire to feel stable and hopeful. He is the first politician that she ever overtly supported, and she grew to feel a comradery with his other supporters. It was the first time in her life when she ever truly felt a part of something larger than herself. When he lost the 2020 election, she felt lost and willingly accepted his unsubstantiated claims that the election was stolen. She traveled to Washington, D.C. to hear him speak on January 6, 2021, and she followed the crowd from his speech to the Capitol believing that she was a part of something greater. She regrets the decision to come to Washington, D.C. and her separate decision to leave the National Mall. She especially regrets bringing her son, whom she has spent most of her adult life protecting. She knows that her actions contributed to the black mark that the insurrection will be remembered as in American History.

Heather stopped commenting on politics well before she was arrested in this case. She has not posted on Facebook regarding Trump or the election in over two years. She still believes Trump's false claims that he won the 2020 election, but this belief is unfortunately not an outlier. Following election day on November 3, 2020, President Trump spread falsehoods that there had been outcome determinative fraud in the election and that he had actually won. He continues to spread those falsehoods now, three years later.[9]

The falsehoods have taken hold. President Trump is the current front-runner for the 2024 Republican nomination.[10] The newly elected Speaker of the House, Speaker Mike Johnson of Louisiana, "falsely claimed the election was 'rigged[,]'" "persuaded more than 60 percent of House Republicans to sign" "a legal brief in support of a Texas lawsuit, rooted in baseless claims of widespread election irregularities, that tried to throw out the results in four battleground states won by" President Biden, and was "a key architect of Republicans' objections to certifying [President] Biden's victory on Jan. 6, 2021."[11] Today, 63% of Republicans believe President Biden's win was not legitimate

---

[9] Robert Yoon, *Trump's drumbeat of lies about the 2020 election keeps getting louder. Here are the facts*, AP News (Aug. 27, 2023 at 9:43 am EDT) https://apnews.com/article/trump-2020-election-lies-debunked-4fc26546b07962fdbf9d66 e739fbb50d; Nicholas Riccardi & David Klepper, *Trump and his allies double down on election lies after indictments for trying to undo 2020 results*, AP News (Aug. 21, 2023 at 12:07 am EDT) https://apnews.com/article/trump-indictment-2020-election-lies-georgia-misinformation-4b2269d68dad3024bd5afa711478505a.

[10] Sam Cabral, *US Presidential Election 2024: The Republicans challenging Donald Trump*, BBC News (Sept. 25, 2023) https://www.bbc.com/news/world-us-canada-63550237.

[11] Luke Broadwater & Steve Eder, *Johnson Played Leading Role in Effort to Overturn 2020 Election*, The New York Times (Oct. 25, 2023) https://www.nytimes.com/2023/10/ 25/us/politics/mike-johnson-2020-election- overturn.html.

(with 36% of Republicans believing there is solid evidence that the election was not legitimate).[12]

Heather's political beliefs are consistent with the beliefs of the majority of her party.  What is important is that she is committed to never again act on her beliefs.  She recognizes the foolishness of her actions and has sworn never to repeat them, "I did this for Trump.  He doesn't care about me. He won't help me. Why would he care? It was really stupid. I didn't see it then."[13]

## II. SIMILARLY SITUATED DEFENDANTS HAVE BEEN SENTENCED TO PROBATION

The government references several cases of defendants who have been sentenced for their conduct on January 6th and attempts to make a comparison between those defendants and Heather Kepley. The government's reliance on *United States v. Young*, No. 21-291-ABJ, focuses on Mr. Young's decision to bring his 16-year-old son to Washington, but that factor is the only commonality between the cases and the government admits Mr. Young's "case is clearly more serious than" Heather's. Gov't Mem. at 21. Mr. Young pleaded guilty to assaulting, resisting or impeding an officer in violation of 18 U.S.C. § 111(a)(10). Mr. Young used physical strength and force to exert control over an officer's body to restrict movements; his

---

[12] Philip Bump, *Six in 10 Republicans still think 2020 election was illegitimate*, The Washington Post (May 24, 2023 at 4:34 pm EDT); *see also* Robert Yoon, *Trump's drumbeat of lies about the 2020 election keeps getting louder.  Here are the facts*, AP News (Aug. 27, 2023 at 9:43 am EDT) https://apnews.com/article/trump-2020-election-lies-debunked-4fc26546b07962fdbf9d66e739fbb50d ("There is evidence that [President Trump's] lies are resonating: New polling from The Associated Press-NORC Center for Public Affairs Research shows that 57% of Republicans believe Democrat Joe Biden was not legitimately elected as president.").

[13] Exhibit B at 9.

Guidelines range was 77 to 96 months.  In contrast, Heather's conduct involved moving barricades and entrance into the tunnel; her Guidelines range is zero to six months.

While no case contains the exact balance of aggravating and mitigating factors present here, there are several more analogous to Heather's conduct. None of the defendants in these more analogous cases received the five-month sentence the government now contends is necessary.  In *United States v. Mels*, No. 21-184-BAH, this Court sentenced Mr. Mels to 36 months of probation with 3 months of home detention.[14] Mr. Mels "entered the Capitol building less than one minute after other rioters violently overran a line of Capitol Police officers" and "harangued a Capitol Police lieutenant, waving a booklet close to the officer's face and diverting the officer's attention as the Capitol breach was unfolding." (*United States v. Mels*, No. 21-184-BAH, D.I. 77, Gov't Sent. Mem. at 2). Mr. Mels spent "approximately 10 minutes in the Senate Wing Door area" before continuing "deeper into the Capitol building, marching through the Crypt, by the Memorial Door, and through the Hall of Columns, before exiting the building through the South Door." *Id.* This conduct is more severe than Heather's. Although, Mr. Mels sent messages that could be comparable to Heather's social media posts, the government acknowledged Mr. "Mels' text messages make clear that he anticipated that the January 6 events would turn violent." (*United States v. Mels*, No. 21-184-BAH, D.I. 77, Gov't Sent. Mem. at 4). Mr. Mels also was exposed to gas but still continued to make his way up the stairs to the capitol. Like Heather, Mr. Mels has mitigating factors; he too was an hourly wage earner and risked losing his job and home if he were to serve a custodial sentence.

---

[14] While the Defense does not believe that home detention is warranted here, Heather has discussed the possibility of working while on home detention with her employer and is confident that she could continue her employment and parenting responsibilities if so sentenced in this case.

However, Mr. Mels also had a prior fraud offense and did not report to pretrial services as directed on three occasions.

In *United States v. Slaeker*, No. 21-604-PLF, Mr. Slaeker pleaded guilty to 18 U.S.C. § 1752(a)(1) and was sentenced to 30 days' home detention and 36 months' probation.  Mr. Slaeker prepared for violence by bringing a helmet to Washington, D.C., spent approximately 15 minutes inside the Capitol building, climbed the scaffolding that had been erected at the Capitol in preparation for the inauguration, entered the Capitol building multiple times, and was present in multiple locations of the Capitol. (*United States v. Slaeker*, No. 21-604-PLF, D.I. 53, Gov't Sent. Mem. at 2). In the days following the riot, he made statements that could be viewed in a similar light as Heather's social media posts, even indicating that he believed a civil war is coming and suggesting the possibility of additional criminal conduct. (*Id.* at 25).  His posts continued after he was arrested and charged. He also failed to cooperate willingly with Pretrial Services while on pretrial release and would not turn over his firearms. In fact, the whereabouts of his firearms remained an issue up until the time of his sentencing. In stark contrast, Heather has complied with all conditions throughout her time on pretrial release and has not posted to social media since the days immediately following January 6, 2021.

In *United States v. Gable*, No. 22-189-JMC, Mr. Gable received a sentence of 24 months of probation with 45 days of home detention. Like Heather, Mr. Gable also pleaded guilty to 18 U.S.C. § 1752(a)(1). However, unlike Heather, Mr. Gable went into the building through the Senate wing doors within 6 minutes of the initial breach and remained in the building for 30 minutes. He described gas munitions used by police to control the crowd but still continued up the steps to the Upper West Terrace. He also took

video that was subsequently uploaded to Facebook of him at the front of the mob that confronted the police line. (*United States v. Gable*, No. 22-189-JMC, D.I. 26, Gov't Sent. Mem. at 3). In addition, he uploaded another self-recorded video of rioters chanting "Nancy, Nancy, Nancy." (*Id.* at 5). Mr. Gable previously served 68 months in prison for his participation in an armed robbery scheme. His compliance with his terms of supervision was inconsistent and described by Mr. Gable as an inconvenience. (*Id.* at 11). As noted in the PSR, prior to the events of this case, Heather had but a single speeding ticket on her criminal record.

In *United States v. Brooks*, No. 22-018-JMC, Mr. Brooks pleaded guilty to 18 U.S.C. § 1752(a)(1) and although the government asked for a three-month custodial sentence, the district court ultimately sentenced him to 12 months of probation. According to the government's sentencing memorandum, Mr. Brooks (1) prepared for violence by bringing tear gas, a camouflage body armor vest, and two-way radio to Washington, D.C.; (2) climbed railings in order to access the Capitol; (3) gave a television interview that disclaimed responsibility; (4) observed people punching officers and still remained at the Capitol; (5) had verbal altercations with police officers on the Capitol grounds where he waived a military ballcap at officers and shouted, "You took an oath like I did, so did you, every one of you! What are you doing! Help us make this a better fucking place! All you gotta do, is do the right thing! That's all I'm asking! Do the right thing!" and (6) remained at the Capitol for at least two and one-half hours. (*United States v. Brooks*, No. 22-018-JMC, D.I. 31, Gov't Sent. Mem. at 2). In contrast to Heather, Mr. Brooks was prepared for violence when he traveled to Washington, D.C.

In *United States v. Herendeen*, No. 21-278-BAH-2, the government's sentencing memorandum indicates that Mr. Herendeen expected to meet violence at the Capitol before he even left Michigan and told a confidential source, "If I die, I die saving the nation;" took black-tinted goggles, a flak jacket, tactical vest, a canister of bear spray, and a face covering depicting an American flag with him to Washington, D.C.  At the Capitol Building on January 6, 2021, he wore the goggles, flak jacket, and tactical vest and carried the bear spray inside a black military-style backpack; he entered the Capitol Building through the Senate Wing Door approximately seven minutes after the initial breach of the Capitol at that location;  he took photos and videos of himself and other rioters inside the Crypt of the Capitol Building and posted them on Facebook; and attempted to profit from his participation in the riot by offering to sell photos of himself in the Capitol for further distribution. (*United States v. Herendeen*, No. 21-278-BAH-2, D.I. 79, Gov't Sent. Mem. at 1–2). Those factors show the severity of Mr. Herendeen's conduct compared to Heather's.  Like Heather, Mr. Herendeen was the primary caretaker for two teenagers. Unlike Heather, Mr. Herendeen had a criminal history. The government asked for 28 days of incarceration and three years of probation.  This Court sentenced Mr. Herendeen to 36 months of probation with 14 days of intermittent confinement and two months of home detention.

Finally, in *United States v. Schornak*, No. 21-278-BAH-1, Mr. Schornak pleaded guilty to 18 U.S.C. § 1752(a)(1).  Mr. Schornak expected to meet violence on January 6, 2021, and he came equipped with a vest, helmet, and bullhorn. (*United States v. Schornak*, No. 21-278-BAH-1, D.I. 62, Gov't Sent. Mem. at 1–2). He was inside the Capitol for 12 minutes. While inside, he stole a flag and paraded around the Capitol with

it.  (*Id.* at 2).  He consistently bragged about his conduct and posted on Facebook. (*Id.* at 2).  The government requested a sentence of four to six months imprisonment, but this Court sentenced Mr. Schornak to 36 months of probation with two separate 14-day periods of incarceration and two months of home detention.

   III. <u>SECTION 3553(a) SENTENCING FACTORS</u>

   When determining an appropriate sentence, the court is guided by the 18 U.S.C. § 3553 factors, which are: (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) The need for the sentence imposed, including that the sentence provide the defendant with needed training and treatment in the most effective manner; (3) The kinds of sentences available; (4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) Any pertinent policy statement; (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) The need to provide restitution to any victims of the offense.

   In the present case, a sentence of twenty-four months of probation is sufficient, but not greater than necessary, to comply with the statutory directives set forth in § 3553(a). Such a sentence meets the goals of sentencing under the law and represents adequate punishment for a woman with no prior criminal history, who has demonstrated compliance with the conditions set by pre-trial services since her arrest, who maintains employment, and who is the sole custodian for a minor child. The seriousness of this offense is not in dispute. There is recognition of this by all involved, most significantly, by Heather. She is not a risk to reoffend because she now recognizes that she was used

12

politically in the same way that she has been used and abused by others in her life. She will continue to vote, but she will no longer show up anywhere in person. She has two children to live for and stable employment. It is not always an ideal life, but she prefers to control what she can. A probationary sentence is a guideline sentence in this case and is an appropriate one.

IV. <u>CONCLUSION</u>

For the foregoing reasons it is respectfully requested that this court impose a sentence of twenty-four (24) months of probation, 60 hours of community service, and $500 restitution order, with conditions of release to be fashioned by the court at the time of sentencing.

Respectfully submitted,

ELENI KOUSOULIS
Federal Public Defender

Dated: <u>October 30, 2023</u>                    By: <u>/s/ Conor Wilson</u>
                                          CONOR WILSON, ESQ.
                                          Assistant Federal Public Defender
                                          800 King Street, Suite 200
                                          Wilmington, DE 19801
                                          (302) 573-6010
                                          de_ecf@fd.org

                                          Counsel for Heather Kepley